1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
3  RACHELE R. RICKERT (190634)
   rickert@whafh.com
4  WOLF HALDENSTEIN ADLER
      FREEMAN & HERZ LLP
5  Symphony Tower
   750 B Street, Suite 2770
6  San Diego, CA 92101
   Telephone:  619/239-4599
7  Facsimile:  619/234-4599

8
   STEPHEN R. BASSER (121590)
9  sbasser@barrack.com
   BARRACK, RODOS & BACINE
10 402 West Broadway, Suite 850
   San Diego, CA  92101
11 Telephone:   619/230-0800
   Facsimile:   619/230-1874
12
13 Co-Lead Counsel for Plaintiffs

14 [Additional Counsel Appear On Signature Page]

15
                    UNITED STATES DISTRICT COURT
16
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
17
                           OAKLAND DIVISION
18

19 In re VERISIGN, INC. DERIVATIVE       )  Master File No. C-06-4165-PJH
   LITIGATION                            )
20                                        )  **PLAINTIFFS' NOTICE OF MOTION AND**
   _____   )  **MOTION FOR PRELIMINARY**
21                                        )  **APPROVAL OF DERIVATIVE**
   This Document Relates To:             )  **SETTLEMENT; MEMORANDUM OF**
22                                        )  **POINTS AND AUTHORITIES**
                                         )
23       All Actions                     )  DATE:      March 3, 2010
                                         )  TIME:      9:00 a.m.
24                                        )  CRTRM:     3, 3rd Floor
   _____   )  JUDGE:     Hon. Phyllis J. Hamilton
25

26

27

28

TABLE OF CONTENTS

PAGE

I.      ISSUE TO BE DECIDED ..................................................................................1

II.     INTRODUCTION ..........................................................................................1

III.    PROCEDURAL HISTORY...............................................................................3

IV.     PROPOSED SETTLEMENT TERMS ...............................................................4

V.      THIS SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
        APPROVAL OF SETTLEMENT OF DERIVATIVE ACTIONS ........................7

        A.      The Procedure for Preliminary Approval of a Derivative Action in
                Federal Courts is Well Established ..................................................7

        B.      The Law Favors Settlement of Derivative Actions............................8

VI.     THE STANDARD FOR JUDICIAL APPROVAL OF DERIVATIVE
        SETTLEMENTS WARRANTS APPROVAL OF THIS SETTLEMENT ..........9

        A.      The Role of the Court in Approval of a Derivative Settlement ...............9

        B.      The Settlement Should be Preliminarily Approved and Finally
                Approved After Notice to VeriSign Shareholders ....................................11

                1.      The Risks of Establishing Liability.............................................11

                2.      The Settlement Was Negotiated by the Parties with a Thorough
                        Understanding of the Strengths and Weaknesses of the Case ......12

                3.      The Settlement is Wholly Reasonable in View of the Serious
                        Risks Posed by Continued Litigation............................................14

                4.      The Complexity, Expense and Likely Duration of the Litigation
                        Would be Considerable Were the Action to Proceed ...................14

                5.      The Experience and View of Counsel Favor Approval ...............15

        C.      The Agreement for the Payment of Fees and Expenses is Appropriate...................16

VII.    PROPOSED SCHEDULE OF EVENTS ...........................................................17

VIII.   CONCLUSION................................................................................................17

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- i -

TABLE OF AUTHORITIES

Page

CASES

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
   603 F.2d 263 (2d Cir. 1979), *cert. cenied*, 444 U.S. 1093,
   100 S. Ct. 1061, 64 L. Ed. 2d 783 (1980) .................................................................14

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ................................................................12, 15

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................10, 15

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
   630 F. Supp. 482 (E.D. Pa. 1985) .................................................................15

*Franklin v. Kaypro Corp.,*
   884 F.2d 1222 (9th Cir. 1989), *cert. denied, Franklin v. Peat Marwick Main & Co.,*
   498 U.S. 890, 111 S. Ct. 232, 112 L. Ed. 2d 192 (1990) .............................................9

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) .................................................................11, 12, 14

*Hensley v. Eckerhart,*
   461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) .............................................16

*In Re Apple Computer Sec. Litig.,*
   No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .................14

*In Re CNET Networks, Inc.,*
   483 F. Supp. 2d 947 (N.D. Cal. 2007) .................................................................12

*In Re Linear Tech. Corp. Deriv. Litig.,*
   No. C-06-3290 MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) .................................12

*In Re M.D.C. Holdings Sec. Litig.,*
   No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ..................16

*In Re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) .................................................................13

*In Re NVIDIA Corp. Derivative Litigation,*
   No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....................7, 10

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- ii -

*In Re Pac. Enters. Sec. Litig.,*
  47 F.3d 373 (9th Cir. 1995) ...........................................................................12

*In Re PMC-Sierra, Inc. Deriv. Litig.,*
  No. C06-05330 RS, 2007 WL 2427980 (N.D. Cal. Aug. 22, 2007)............................12

*In re Warner Commc'ns Sec. Litig.*
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ........................12

*In Re Warner Commc'ns Sec. Litig.,*
  798 F.2d 35 (2d Cir. 1986).................................................................................9

*Lyons v. Marrud, Inc.,*
  No. 66 Civ. 415, 1972 WL 327 (S.D.N.Y. June 6, 1972).........................................15

*Maher v. Zapata Corp.,*
  714 F.2d 436 (5th Cir. 1983) ...........................................................................8, 9

*Marshall v. Holiday Magic, Inc.,*
  550 F.2d 1173 (9th Cir. 1977) ...........................................................................9

*Matter of Cont'l Ill. Sec. Litig.*
  962 F.2d 566 (7th Cir. 1992) ...........................................................................16

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.,*
  797 F.2d 799 (9th Cir. 1986) ...........................................................................9

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004)......................................................................10

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972), *cert. denied, Benson v. Newman*, 409 U.S. 1039,
  93 S. Ct. 521, 34 L. Ed. 2d 488 (1972) ..............................................................14

*Officers For Justice v. Civil Service Comm'n,*
  688 F.2d 615 (9th Cir. 1982), *cert. denied, Byrd v. Civil Service Comm'n,*
  459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456 (1983)...................................*passim*

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.,*
  323 F. Supp. 364 (E.D. Pa. 1970) .......................................................................8

*Protective Comm. For Indep. Stockholders Of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414, 88 S. Ct. 1157, 20 L.Ed 2d 1 (1968) ................................................15

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- iii -

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) *cert. denied, Reilly v. Tucson Elec. Power Co.*,
  512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994) .....................................................8, 10

*Wal-Mart Stores v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...........................................................................................................13

*Weinberger v. Kendrick*,
  698 F.2d 61 (2nd Cir. 1982) ........................................................................................................15

*Williams v. First Nat'l Bank*,
  216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910) ......................................................................9

*Zimmerman v. Bell*,
  800 F.2d 386 (4th Cir. 1986) .........................................................................................................9

## STATUTES

15 U.S.C.
  § 78j(b)..........................................................................................................................................4
  § 78t(a)...........................................................................................................................................4

Cal. Corp. Code
  25402 .............................................................................................................................................4
  25403..............................................................................................................................................4

Fed. R. Civ. P.
  23.....................................................................................................................................................8
  23.1..................................................................................................................................................8
  23.1(c) .............................................................................................................................................9

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION
  § 13.14 (4th ed. 2004)....................................................................................................................7
  § 30.41 (3d ed. 1995) .................................................................................................................7, 8
  § 30.42 (3d ed. 1995) ...................................................................................................................13
  § 31.8 (4th ed. 2004) ......................................................................................................................8

5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE
  ¶ 23.83[1] (3d ed. 2002)................................................................................................................8

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- iv -

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

On Wednesday, March 3, 2010 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 3rd Floor, of the above-entitled Court, 1301 Clay Street, Suite 400S, Oakland, California 94612, before the Honorable Phyllis J. Hamilton, Plaintiffs Ruthy Parnes and the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union ("Port Authority") will move for preliminary approval of the settlement of this derivative litigation. This motion is based upon the accompanying Memorandum of Points and Authorities in support of this motion filed by Plaintiffs, the accompanying Stipulation and Agreement of Settlement of Litigation and exhibits thereto, the Court's file, and such other matters as may be considered at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   ISSUE TO BE DECIDED

Should the proposed settlement of this derivative action (the "Settlement") be preliminarily approved?

### II.   INTRODUCTION

This memorandum is submitted by Plaintiffs in support of their motion for preliminary approval of the Settlement of the derivative claims brought on behalf of VeriSign, Inc. ("VeriSign" or the "Company"), against certain of its officers and directors (the "Individual Defendants") arising out of and relating to the allegations of options backdating at VeriSign. The Settlement will resolve not only this action, but also the actions pending in the Superior Court of California, County of Santa Clara, consolidated as *In re Verisign, Inc. Options Litigation*, Lead Case No. 1-07-CV-085890 (the "Santa Clara Action") and the action pending in the Superior Court of California, County of Santa Clara, captioned *Port Authority of Allegheny County v. Bidzos*, Case no. 1:06-cv-069192 (the "State Derivative Action").

The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement of Litigation dated January 27, 2010 (the "Stipulation") submitted herewith. The Settlement is the result of extensive, arm's-length negotiations over a period that spanned more than two years between Plaintiffs' counsel in this action, the plaintiffs' counsel in the Santa Clara Action and the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 1 -

1   plaintiff's counsel in the State Derivative Action and counsel for the Company, including two day-

2   long, in-person negotiating sessions in Washington, D.C.

3         The Settlement provides substantial benefits to VeriSign, the company on whose behalf

4   this derivative action was brought, including full implementation of certain stock-option

5   remediation measures, prohibition of the replacement and/or re-pricing of stock-option grants

6   absent shareholder approval, and implementation of significant and beneficial corporate

7   governance changes.  These changes are specifically designed to prevent any future problems in

8   the Company's granting of options.  The core allegations of the operative derivative complaint

9   relate to an alleged options backdating scheme over the course of several years and certain

10  accounting manipulations which Plaintiffs allege rendered VeriSign's financial statements for the

11  years 1998 through 2005 materially false and misleading.  The corporate governance changes

12  provided for by the Settlement are designed to prevent a recurrence of the issues that led to

13  VeriSign's restatement of its financial results in July 2007 following the completion of the internal

14  investigation of the Company's historical option practices and accounting (the "Restatement").

15  The corporate governance changes are also expected to yield positive changes in many areas, with

16  a focus on VeriSign's policies and procedures regarding the granting of options and accounting

17  practices and procedures.  The Settlement constitutes a favorable resolution for VeriSign of a case

18  of substantial complexity.

19        Plaintiffs ask the Court to enter the [Proposed] Preliminary Approval Order ("Notice

20  Order"), filed concurrently herewith, (a) granting preliminary approval of the Settlement, (b)

21  directing that notice be given to current VeriSign shareholders, and (c) scheduling a hearing at

22  which the Court will consider final approval of the Settlement ("Settlement Hearing") and

23  Plaintiffs' application for attorneys' fees and expenses.  In determining whether preliminary

24  approval is warranted, the issue before the Court is whether the Settlement is within a range of

25  what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should

26  be provided to VeriSign shareholders and a hearing should be scheduled for final settlement

27  approval.

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

### III.   PROCEDURAL HISTORY

On July 5, 2006, Plaintiff Ruthy Parnes filed a derivative action in the United States District Court for the Northern District of California (the "District Court") on behalf of Nominal Defendant VeriSign. On or about August 14, 2006, Plaintiff Port Authority filed derivative actions in the District Court and in the California Superior Court, County of Santa Clara (the "State Court"), also alleging claims on behalf of VeriSign. On October 6, 2006, the Court signed an Order consolidating the two shareholder derivative actions and appointing Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Barrack, Rodos & Bacine ("Barrack, Rodos") as Co-Lead Counsel. On November 20, 2006, Plaintiffs filed a Verified Consolidated Amended Shareholder Derivative Complaint (the "Amended Complaint"). The Amended Complaint alleged that the Individual Defendants participated in the backdating of option grants over several years beginning in 1998 and that VeriSign's auditor, KPMG LLP ("KPMG"), committed negligence and/or professional malpractice and breached its contract with VeriSign by failing to audit the Company's financial statements with due professional care.

On February 5, 2007, VeriSign and the Individual Defendants filed and served various motions to dismiss, and on February 12, 2007, KPMG filed and served a motion to compel mediation and/or arbitration and a motion to dismiss. Plaintiff's oppositions to Defendants' motions to dismiss and KPMG's motion to compel arbitration were filed on March 22, 2007, and Defendants' reply memoranda were filed thereafter. On September 14, 2007, the Court granted in part and denied in part VeriSign's and the Individual Defendants' motions to dismiss and granted KPMG's motion to compel arbitration. The Court dismissed the Amended Complaint with leave to amend.

On July 12, 2007, VeriSign restated its financial statements for the years ended December 31, 2005 and 2004, and recognized additional stock-based compensation expense of $171.4 million on a pre-tax basis for the periods from 1998 to 2006 due to stock options with "incorrectly determined measurement dates." The Company admitted that many of the option grants were "selected in hindsight based on an advantageous share price." *See* VeriSign, Inc., Annual Report (Form 10-K), at *6, *7 (July 12, 2007).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 3 -

On November 16, 2007, Plaintiffs filed a Verified Second Amended Shareholder Derivative Complaint ("SAC"). The SAC asserted claims against the Individual Defendants for breaches of fiduciary duties and/or aiding and abetting, unjust enrichment, constructive fraud, corporate waste, breach of contract, violations of Cal. Corp. Code sections 25402 and 25403, and for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and against KPMG for negligence/professional malpractice.

Meanwhile, counsel for Defendants, Plaintiffs' counsel in this action and counsel for plaintiffs in the Santa Clara Action and the State Derivative Action engaged in numerous settlement discussions and negotiations, commencing in November 2007, including meetings in person among respective counsel in Washington, D.C. on January 7, 2008 and October 1, 2008, and innumerable related telephonic conference calls.[1] As a result of these extensive arm's-length negotiations, the parties reached an agreement in principle providing for the proposed Settlement on the terms and conditions set forth in the Stipulation.

## IV.     PROPOSED SETTLEMENT TERMS

As a result of extensive negotiations among counsel, Wolf Haldenstein and Barrack, Rodos,[2] Co-Lead Counsel for Plaintiffs and Stull, Stull and Brody, counsel for plaintiffs in the Santa Clara Action, successfully negotiated significant corporate governance measures that address the issues raised in this litigation and enhance VeriSign's corporate practices.

VeriSign has properly acknowledged that, in part, as a result of the litigation, VeriSign's Board of Directors (the "Board") has taken certain remedial measures, such as fully implementing certain stock option remedies, prohibiting the re-pricing and/or replacing of stock option grants absent shareholder approval, and the implementation of corporate governance changes. Specifically, the Stipulation provides:

---

[1]     The due date for Defendants' responses to the SAC was extended by Stipulation and Order twice, on December 14, 2007, and January 29, 2008, in light of the parties' settlement discussions, and a Stipulation and Order was entered on March 3, 2008, extending the due date for Defendants' responses until after settlement discussions have been terminated.

[2]     Barrack, Rodos is also counsel for the plaintiff Port Authority in the State Derivative Action.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

1.     VeriSign shall have fully implemented the stock option remedies as announced in VeriSign's Restatement filed on July 12, 2007, which include each of the following:

    a.     Former CEO:   An option grant to the former CEO of 100,000 shares originally dated December 29, 2000, at an exercise price of $74.188 was modified to a new exercise price of $127.31.

    b.     Former CEO:   The February 2002 option grant to the former CEO of 600,000 shares originally dated February 21, 2002, at an exercise price of $22.71 was modified to a new exercise price of $26.31.

    c.     Former CFO:   An option grant to the former CFO of 25,000 shares originally dated December 29, 2000, at an exercise price of $74.188 was modified to a new exercise price of $127.31.

    d.     Former CFO:   An option grant to the former CFO of 125,000 shares originally dated August 1, 2000, at an exercise price of $151.25 was modified to a new exercise price of $165.22.

    e.     Former CFO:   An option grant to the former CFO of 40,000 shares originally dated March 15, 2001, at an exercise price of $34.44 was modified to a new exercise price of $42.26. The CFO's 409A tax election modified 1,667 of these options and the Board of Directors determined to modify the remaining 38,333 options.

    f.     Former CFO:   A grant to the former CFO of 90,000 shares originally dated September 6, 2001, at an exercise price of $34.16 was modified to a new exercise price of $38.30. The CFO's 409A tax election modified 11,250 of these options and the Board of Directors determined to modify the remaining 78,750 options.

    g.     Former CFO:   The February 2002 option grant to the former CFO of 100,000 shares originally dated February 21, 2002, at an exercise price of $22.71 was modified to a new exercise price of $23.74.[3] *See* Stipulation, ¶ 2.2.

---

[3]    The Stipulation requires VeriSign to provide Plaintiffs' counsel with documentation sufficient to demonstrate and confirm: (1) that the stock option remediation items have been adequately implemented; and (2) the implementation of its written internal guidelines for stock

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

2.    The re-pricing and/or replacing of stock option grants respecting VeriSign securities is expressly prohibited and shall not be permitted under any circumstances absent the approval of VeriSign's shareholders under and pursuant to paragraph 24 of the VeriSign, Inc. 2006 Equity Incentive Plan (hereinafter the "Plan"). *See* Stipulation, ¶ 2.4.

3.    All amendments to the Plan shall contain certain language and defined terms which shall be interpreted to provide and require that the exercise price of any granted option of any VeriSign security must be at least the fair market value of the stock on the grant date. *See* Stipulation, ¶¶ 2.4-2.5.   Any exceptions to the aforesaid interpretation of the Plan must be expressed in writing and expressly incorporated clearly and specifically in the language of the Plan, immediately upon approval by VeriSign's Board of Directors or the Board's Compensation Committee and within a reasonable time in advance of the implementation of any stock option grant with notice to shareholders given via an appropriate filing with the Securities and Exchange Commission ("SEC"). *See id.* at ¶2.6.

4.    For the entire period terminating on the third anniversary from the Effective Date of the Settlement, the following procedures and protocols shall be implemented and adhered to by the Company and on its behalf:

   a.    Any VeriSign stock option grants to Section 16 employees will be made by or on behalf of VeriSign only at in-person or telephonic meetings of the Board or the Board's Compensation Committee;

   b.    Effective January 1, 2009, the Board shall receive corporate governance training either through in-house presentations or external director education programs;

   c.    All stock options grants to Section 16 employees shall not only be timely disclosed in an appropriate form of filing with the SEC, but shall also be posted on VeriSign's company website within a reasonable time after such filings;

   d.    VeriSign's Chief Executive Officer or its Chairman of the Board shall attend the Company's Annual Meeting of Shareholders.  In the event the Chief Executive Officer

---

option grants identified in VeriSign's Annual Report on Form 10-K dated July 12, 2007 prior to preliminary approval of the Settlement. Stipulation, ¶¶ 2.3, 2.7, 2.9.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 6 -

1  or Chairman are incapacitated or otherwise unable to attend, the next most senior officer will

2  appear at the Annual Meeting of Shareholders for the Company; and

3              e.      A VeriSign company representative shall attend its Annual Meeting of

4  Shareholders in order to present information to or otherwise answer questions from VeriSign's

5  shareholders regarding its stock option Plan or practices. *See* Stipulation, ¶ 2.8.

6         VeriSign has acknowledged that the prosecution of this action, the Santa Clara Action and

7  the State Derivative Action was considered by VeriSign's Board and Ad Hoc Group[4] in evaluating

8  and enacting remedial steps to be taken by the Company, and that the actions and efforts of

9  Plaintiffs' counsel and the Santa Clara Action plaintiffs' counsel influenced the decision-making

10  process and adoption of corporate governance reforms and policy changes contained in the

11  Stipulation or in VeriSign's Annual Report on Form 10-K dated July 12, 2007. *See* Stipulation,

12  ¶ 2.10; *see also* VeriSign, Inc., Annual Report (Form 10-K) (July 12, 2007).

13  **V.**      **THIS SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY**
14          **APPROVAL OF SETTLEMENT OF DERIVATIVE ACTIONS**

15       **A.**      **The Procedure for Preliminary Approval of a Derivative Action in**
             **Federal Courts is Well Established**

16         As stated in the MANUAL FOR COMPLEX LITIGATION § 13.14, at 173 (4th ed. 2004), "[f]irst,

17  the judge reviews the [proposed settlement] preliminarily to determine whether it is sufficient to

18  warrant public notice and a hearing." "In order to grant preliminary approval, the Court need only

19  conclude that the settlement of the claims on the agreed upon terms is 'within the range of possible

20  approval.'" *In re NVIDIA Corp. Derivative Litigation*, No. C-06-06110-SBA (JCS), 2008 WL

21  5382544, at *2 (N.D. Cal. Dec. 22, 2008) (quoting MANUAL FOR COMPLEX LITIGATION § 30.41, at

22  237 (3d ed. 1995)). As the *Manual for Complex Litigation* explains:

23         If the preliminary evaluation of the proposed settlement does not disclose grounds
24         to doubt its fairness or other obvious deficiencies, such as unduly preferential
       treatment of class representatives or of segments of the class, or excessive

25  _____

26  [4]     The "Ad Hoc Group" was a subset of directors who had not served on the Compensation
Committee before 2005 and who conducted an internal review and analysis of VeriSign's
27  historical stock option grants. The Ad Hoc Group retained Cleary Gottlieb Steen & Hamilton LLP
as independent outside counsel as well as a group of forensic accountants in the course of
28  conducting its investigation. Stipulation at 3.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> compensation for attorneys, and appears to fall ***within the range of possible approval***, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MANUAL FOR COMPLEX LITIGATION § 30.41, at 237 (3d ed. 1995) (emphasis added); *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's use of a preliminary approval process), *cert. denied*, *Reilly v. Tucson Elec. Power Co.*, 512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994).[5]  Preliminary approval is merely a prerequisite to incurring the expense of notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). The ultimate question of whether the Settlement is fair, reasonable and adequate will be made after notice of the Settlement is given to shareholders and a final settlement hearing is held by the Court.

Importantly, preliminary approval does not require the trial court to answer the ultimate question – whether a proposed settlement is fair, reasonable and adequate.  Rather, that determination is made only after notice of the settlement has been given to shareholders and after they have been given the opportunity to comment on the settlement. *See* 5 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002).

The proposed settlement meets the foregoing criteria for notice as it falls "within the range of possible approval," and should therefore be preliminarily approved by the Court. MANUAL FOR COMPLEX LITIGATION § 30.41, at 237 (3d ed. 1995).

### B.    The Law Favors Settlement of Derivative Actions

There is a strong policy favoring compromises which resolve litigation. *Williams v. First*

---

[5]    The settlement approval process for class action litigation under Fed. R. Civ. Pro. 23 is analogous to the settlement approval process for derivative litigation under Fed. R. Civ. Pro. 23.1. *See* MANUAL FOR COMPLEX LITIGATION § 31.8, at 559 (4th ed. 2004) ("Counsel need court approval to settle class or derivative actions, and when such approval is sought, the court should apply the principles and procedures governing settlements of class actions in general."); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (where court cited to class action cases for authority on the standards for determining fairness, reasonableness, and adequacy of proposed derivative settlement).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 8 -

1    *Nat'l Bank*, 216 U.S. 582, 595, 30 S. Ct. 441, 54 L. Ed. 625 (1910); *MWS Wire Indus., Inc. v. Cal.*

2    *Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986) (citing an "overriding public interest in settling

3    and quieting litigation.") (citation omitted). "Litigation settlements offer parties and their counsel

4    relief from the burdens and uncertainties inherent in trial. ... The economics of litigation are such

5    that pretrial settlement may be more advantageous for both sides than expending the time and

6    resources inevitably consumed in the trial process." *Franklin v. Kaypro Corp.*, 884 F.2d 1222,

7    1225 (9th Cir. 1989), *cert. denied, Franklin v. Peat Marwick Main & Co.*, 498 U.S. 890, 111 S.

8    Ct. 232, 112 L. Ed. 2d 192 (1990). Derivative actions readily lend themselves to compromise

9    because of the difficulties of proof, the uncertainties of the outcome and the typical length of the

10    litigation. *See Maher*, 714 F.2d at 455 ("Settlements of shareholder derivative actions are

11    particularly favored because such litigation is 'notoriously difficult and unpredictable.'") (citation

12    omitted). Settlements of derivative actions are "favored for the reasons that settlements generally

13    are favored: disputes are resolved; the resources of litigants and the courts are saved; and, in the

14    case of a derivative action, management can return its attention and energy from the courtroom to

15    the corporation itself." *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986).

16    **VI.    THE    STANDARD    FOR    JUDICIAL    APPROVAL    OF    DERIVATIVE
          SETTLEMENTS WARRANTS APPROVAL OF THIS SETTLEMENT**

17         **A.    The Role of the Court in Approval of a Derivative Settlement**

18         The settlement of a corporate derivative action requires court approval. Fed. R. Civ. P.

19    23.1(c).[6]  In this regard, the Court is to determine whether a settlement is fair and reasonable.

20    *Maher*, 714 F.2d at 455 (settlement of shareholders' derivative action must be fair, adequate and

21    reasonable, and without fraud or collusion); *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37

22    (2d Cir. 1986); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982),

23    *cert. denied*, *Byrd v. Civil Service Comm'n*, 459 U.S. 1217, 103 S. Ct. 1219, 75 L. Ed. 2d 456

24    (1983); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). In assessing the

25

26    [6]    Federal Rule of Civil Procedure 23.1(c) states:

27         The actions shall not be dismissed or compromised without the approval of the

28         court, and notice ... shall be given to shareholders or members in such manner as
          the court directs.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 9 -

adequacy of the terms of a settlement, the Court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted); *NVIDIA*, 2008 WL 5382544, at *4 ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.") (citing *Officers for Justice*, 688 F.2d at 625).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of the class action settlement (which as set forth above, *supra* note 5, are analogous to the factors to be considered in evaluating derivative settlements):

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi*, 8 F.3d at 1375.

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Torrisi*, 8 F.3d at 1375. Therefore, in exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

measure of what *might* have been achieved by the negotiators.

*Id.* (emphasis added).   Applying these criteria demonstrates that this Settlement warrants the Court's preliminary and final approval.

### B.   The Settlement Should be Preliminarily Approved and Finally Approved After Notice to VeriSign Shareholders

Plaintiffs submit that the Settlement is a very good result for VeriSign.  Plaintiffs and their counsel have achieved important benefits for the Company in the form of corporate governance changes that are described above.   These changes directly address Plaintiffs' allegations and provide for, among other things, stricter financial controls.  The Settlement is the culmination of protracted arm's-length negotiations that occurred over more than two years. Strong corporate governance is fundamental to a corporation's economic well-being and success.

Counsel for Plaintiffs have participated in numerous in-person and telephonic meetings and negotiations with counsel to the Company, and have conducted a careful analysis of the law and a thorough examination of the facts relating to the allegations and the Restatement.  Counsel have also carefully weighed the benefits of the Settlement against the substantial risks of continued litigation and have concluded that the benefits to be conferred on VeriSign by the Settlement will, if approved by the Court, result in a very good resolution of the derivative claims and allows VeriSign to prevent a recurrence of similar matters in the future and put these matters to rest.

### 1.   The Risks of Establishing Liability

In assessing the fairness, reasonableness and adequacy of the settlement, the court should balance the benefits of the settlement against the continuing risks of litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Officers for Justice*, 688 F.2d at 625.  As discussed herein, the Settlement of this litigation provides substantial benefits to VeriSign in the form of enhanced corporate governance provisions that directly address the wrongdoing alleged and attempt to prevent future recurrence.

Although Plaintiffs believe that the claims asserted in the litigation were meritorious, liability was by no means a foregone conclusion.  For example, Plaintiffs did not make a pre-litigation demand for action by VeriSign's Board and, though the complaints pled excuses from

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 11 -

1  the demand requirement on the grounds of demand futility, this issue promised to be fiercely

2  litigated in this case. At the time the Settlement was reached, the Court had already once granted

3  Defendants' motions to dismiss, which, among other things, argued that Plaintiffs had failed to

4  allege demand futility. There was a very real risk that this Court would grant Defendants' motions

5  to dismiss a second time, but this time without leave to amend. A number of other courts in this

6  district have also dismissed derivative actions alleging stock-option backdating for failure to

7  adequately plead demand futility. *See, e.g., In re Linear Tech. Corp. Deriv. Litig.*, No. C-06-3290

8  MMC, 2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) (finding stock-option backdating allegations

9  insufficient to demonstrate demand futility); *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947

10  (N.D. Cal. 2007) (same); *In re PMC-Sierra, Inc. Deriv. Litig.*, No. C06-05330 RS, 2007 WL

11  2427980 (N.D. Cal. Aug. 22, 2007) (same).

12  Based upon the record, applicable law and practical reality, it is clear that there were

13  serious risks in overcoming potential defenses and in establishing both liability and damages.

14  Indeed, the Ninth Circuit in affirming the district court's approval of a settlement of a derivative

15  action noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because

16  "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th

17  Cir. 1995). Even if liability were established, the amount of recoverable damages would still have

18  posed significant issues and would have been subject to further litigation. Therefore, instead of

19  the risk of failure to achieve a potentially greater benefit for VeriSign inherent in continued

20  litigation, the Settlement guarantees a result beneficial to the Company with the implementation of

21  important corporate governance changes.

22  **2. The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of the Case**

23  The stage of the proceedings and the amount of discovery completed is another factor

24  which courts consider in determining the fairness, reasonableness and adequacy of a settlement.

25  *Officers for Justice*, 688 F.2d at 625; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741

26  (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Girsh*, 521 F.2d at 157; *see also Boyd v.*

27  *Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

28  This Settlement comes at a relatively early stage of the litigation, foreclosing the

1    extraordinary expense of protracted discovery and trial preparation, the incalculable cost of time
2    and attention diverted from the day-to-day business operations of the Company, and of course the
3    burden to the Court of protracted and complex litigation.  Notwithstanding the relatively early
4    stage in the proceedings, both the knowledge of Plaintiffs' counsel and the proceedings
5    themselves have reached a stage where an intelligent evaluation of the litigation and the propriety
6    of settlement can be made.  Co-Lead Counsel conducted an extensive investigation of the
7    allegations asserted in the action as well as the facts and circumstances related to all of the
8    accounting charges recorded by the Company in the Restatement.  This investigation included a
9    review and analysis of all available documents concerning VeriSign.[7]  In addition, the Settlement
10   was reached only after the Defendants had filed, and the Court had granted, their motions to
11   dismiss Plaintiffs' allegations.  The parties also participated in two in-person and innumerable
12   telephonic negotiation sessions where the strengths and weaknesses of the parties' respective
13   claims and defenses, as well as the facts related to the Restatement, were fully explored.  Thus, the
14   parties reached an agreement to settle this litigation at a point when they had a full understanding
15   of the legal and factual issues surrounding the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213
16   F.3d 454, 459 (9th Cir. 2000).  Settlements reached as a result of arm's-length bargaining between
17   experienced and well-informed counsel are entitled to a presumption of fairness.  MANUAL FOR
18   COMPLEX LITIGATION § 30.42, at 240 (3d ed. 1995); *Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d
19   96, 116 (2d Cir. 2005).

20           Settlement of the case before extensive formal discovery does not stand in the way of
21   approval of the Settlement.  Ninth Circuit law is quite clear that "'formal discovery is not a
22   necessary ticket to the bargaining table' where the parties have sufficient information to make an
23   informed decision about settlement."  *Mego*, 213 F.3d at 459 (citations omitted).  An extensive
24   investigation, the briefing on Defendants' motions to dismiss and the multiple negotiation sessions
25   provided Plaintiffs and their counsel not only with a clear picture of the strengths and weaknesses
26   of the case, but also of the sufficiency of the legal and factual defenses that the Defendants would

27   _____
28   [7]     The Stipulation requires VeriSign to produce confirmatory discovery prior to preliminary
     approval of the Settlement.  Stipulation, ¶¶ 2.3, 2.7, 2.9.

     NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
     MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

                                                                                                - 13 -

raise if litigation were to continue.  Having sufficient information to properly evaluate the case, Co-Lead Counsel have managed to settle this litigation without the substantial expense, risk and uncertainty of continued litigation.

### 3. The Settlement is Wholly Reasonable in View of the Serious Risks Posed by Continued Litigation

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, as one court explained, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, *Benson v. Newman*, 409 U.S. 1039, 93 S. Ct. 521, 34 L. Ed. 2d 488 (1972).  As the Ninth Circuit has made clear, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Given the obstacles and uncertainties inherent in this complex litigation, the Settlement is a very good result and is unquestionably superior to another "possibility" which certainly exists: little or no recovery.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal.  Substantial judgments awarded by trial courts have been reversed on appeal.  *See, e.g., In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict in favor of plaintiff overturned and j.n.o.v. entered in favor of defendant); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial), *cert. denied*, 444 U.S. 1093, 100 S. Ct. 1061, 64 L. Ed. 2d 783 (1980).  Add to these appellate risks the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the factfinder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

### 4. The Complexity, Expense and Likely Duration of the Litigation Would be Considerable Were the Action to Proceed

Another factor militating in favor of the Settlement is the "expense, complexity and likely duration of further litigation." *Officers for Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157.  This case is obviously complex.  If not for this Settlement, the case would have continued to be fiercely

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 14 -

contested by the parties.  Continued litigation here would be extremely complex, costly and of substantial duration.  Assuming Plaintiffs survived the Defendants' attacks on the pleadings, document discovery would need to be completed, depositions would have to be taken, experts would have to be designated and expert discovery conducted.  Defendants would likely file motions for summary judgment which would have to be briefed and argued, a pre-trial order would have to be prepared and motions *in limine* would have to be filed and argued.  A trial could occupy attorneys on both sides and the Court for weeks.  Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeal, which would prolong the case for years with the ultimate outcome uncertain.

### 5.    The Experience and View of Counsel Favor Approval

Experienced counsel operating at arm's-length have weighed all of the foregoing factors and endorse the Settlement.  Whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'"  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2nd Cir. 1982) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 20 L.Ed 2d 1 (1968)).  As the courts have explained, the view of the attorneys actively conducting the litigation is "entitled to significant weight."  *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *see also Weinberger,* 698 F.2d at 74; *Ellis*, 87 F.R.D. at 18; and *Boyd*, 485 F. Supp. at 617.  For example, in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972), the court noted: "Experienced and competent counsel have assessed these problems and the probability of success on the merits.  They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their positions has an important bearing on this case."

Here, counsel for Plaintiffs and Defendants are seasoned practitioners in this specialized area of the law.  The Settlement was reached only after counsel had conducted a substantial investigation, engaged in motion practice and protracted settlement negotiations.  These attorneys have considered the relative strengths and weaknesses of their respective cases, have reached the

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 15 -

agreement embodied in the Stipulation and believe it is a good result for VeriSign and its shareholders and therefore recommend its approval. This conclusion should be afforded considerable weight by the Court.

### C.     The Agreement for the Payment of Fees and Expenses is Appropriate

Significant corporate therapeutic benefits have been conferred upon VeriSign by Plaintiffs' efforts in prosecuting the derivative claims and the Settlement that was ultimately obtained.  As part of the Settlement, VeriSign has agreed to pay, and counsel have agreed to accept, $750,000 in attorneys' fees and expenses to Co-Lead Counsel and counsel for plaintiffs in the Santa Clara Action and the State Derivative Action, subject to Court approval.

The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fee issues in these kind of cases as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court stated: "A request for attorney's fees should not result in a second major litigation. ***Ideally, of course, litigants will settle the amount of a fee.***" (Emphasis added).

In shareholder derivative cases, where the economic value of corporate therapeutic benefits can be difficult to precisely quantify, an agreement on the parameters of a fees and expenses award is particularly appropriate.  *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) (in a decision rendered by former Chief Magistrate Judge Harry R. McCue, the court approved a $3 million fee as part of the settlement of a shareholder derivative case).

Also, the fee here was negotiated under market conditions, a process which courts have encouraged. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).  Both sides were represented by experienced counsel in the negotiations.  Co-Lead Counsel wished to maximize the fees to compensate them (as the case law encourages) for their risk, innovation and creativity, while the Company wished to pay the minimum.  The amount agreed to reflects the parties' and their counsels' experience as to what is appropriate for the benefits obtained.  The result is a fee that was negotiated at arm's-length and set by the market and which

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 16 -

1  is, therefore, a reasonable fee.

2  **VII.   PROPOSED SCHEDULE OF EVENTS**

3        In connection with preliminary approval of the Settlement, the parties are requesting that

4  the Court establish dates by which notice of the Settlement will be sent to VeriSign shareholders,

5  dates by which VeriSign shareholders may comment on the Settlement, and a Settlement Hearing.

6  The following schedule is proposed:

| | |
|---|---|
| Notice mailed to VeriSign shareholders | 20 days after Court enters order preliminarily approving Settlement (March 23, 2010) |
| Last day for VeriSign shareholders to comment on the Settlement | 15 days prior to Settlement Hearing (April 27, 2010) |
| Filing of papers in support of Settlement | 12 days prior to Settlement Hearing (April 30, 2010) |
| Filing of responses to any objections | 7 days prior to Settlement Hearing (May 5, 2010) |
| Settlement Hearing | Approximately 70 days after Court enters order preliminarily approving the Settlement (May 12, 2010 at 9:00 a.m.), or at the Court's convenience thereafter |

17        This schedule is similar to those used in numerous derivative and class action settlements

18  and provides due process to VeriSign shareholders with respect to their rights concerning the

19  Settlement.

20  **VIII.  CONCLUSION**

21        The Settlement achieved is a good result, given the risks and delays inherent in the

22  litigation, and the complexity and expense if the case proceeded to trial.  Accordingly, Plaintiffs

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 17 -

and their counsel respectfully submit that the Settlement is fair, reasonable and adequate and should be approved by the Court.

DATED:  January 27, 2010

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ, LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT

_____/s/ Rachele R. Rickert_____
RACHELE R. RICKERT

750 B. Street, Suite 2770
San Diego, California 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

_____/s/ Stephen R. Basser_____
STEPHEN R. BASSER

402 West Broadway, Suite 850
San Diego, CA  92101
Telephone:  619/230-0800
Facsimile:  619/230-1874

Co-Lead Counsel for Plaintiffs

VERISIGN:16919.MTN

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 18 -

1

**DECLARATION REGARDING CONCURRENCE**

2       I, Rachele R. Rickert, am the ECF User whose identification and password are being used

3   to file this PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY

4   APPROVAL OF DERIVATIVE SETTLEMENT; MEMORANDUM OF POINTS AND

5   AUTHORITIES.   In compliance with General Order 45.X.B, I hereby attest that Stephen R.

6   Basser has concurred in this filing.

7   DATED: January 27, 2010                WOLF HALDENSTEIN ADLER FREEMAN
                                             & HERZ LLP
8

9                                          By: _____ /s/ Rachele R. Rickert _____
10                                                        RACHELE R. RICKERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - Master File No. C-06-4165 PJH

- 19 -